IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLAN D. GREGGS, ) ) Plaintiff, ) ) v. ) ) NANCY A. BERRYHILL, Deputy ) Commissioner for Operations, ) Social Security Administration, ) ) Defendant. ) | No. 17 C 0671 Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Allan D. Greggs's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment [Doc. No. 14] is granted in part, and the Commissioner's motion for summary judgment [Doc. No. 15] is denied. The case is remanded for further proceedings consistent with this Opinion.

## BACKGROUND

### I. Procedural History

In March 2013, Plaintiff filed an application for SSI and, the following month, an application for DIB. (R. 140–141.) Plaintiff's applications alleged a disability onset date of March 5, 2013 due to HIV, bipolar disorder, diabetes, morbid obesity, hypertension/high blood pressure, hepatitis B and C, herpes, anxiety, and mania. (R. 177, 262.) His applications were initially denied and then again upon reconsideration. (R. 173–185.)

Represented by counsel, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on September 30, 2015. (R. 34–84.) A vocational expert ("VE") also appeared and testified at the hearing. (R. 84–93.) On November 20, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. (R. 14–33.) The Appeals Council denied review on November 29, 2016. (R. 1–6.)

### II. ALJ Decision

In determining that Plaintiff was not disabled, the ALJ analyzed Plaintiff's claim according to the five-step sequential evaluation process established under the Act. (R. 18–19.) At step one, the ALJ concluded that Plaintiff met the insured status requirements of the Act through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since March 5, 2013, his alleged onset date. (R. 19.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, hepatitis C, hypertensive vascular disease, renal

disease, anxiety disorder, HIV, and obesity. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20–22.)

Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"). (R. 22–27.) The ALJ found that Plaintiff had the RFC to perform medium work: he could lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour workday with normal rest periods, and sit about six hours in an eight-hour workday with normal rest periods. (R. 22.) Plaintiff's RFC, however, was subject to the following limitations: he was unable to work at heights or frequently climb ladders; he was limited to simple routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes; and he could only have casual interaction with the general public and superficial or casual contact with coworkers. (*Id.*)

Moving to step four, the ALJ relied upon the VE's testimony about Plaintiff's RFC and determined that Plaintiff could perform his past relevant work as a kitchen helper. (R. 27.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*)

## DISCUSSION

### III. ALJ Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine disability, the ALJ considers five questions in the following order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation (i.e., past work)? and (5) Is the plaintiff unable to perform any other work? *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding of disability. *Young*, 957 F.2d at 389. A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* If the plaintiff meets this burden, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *See Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## IV. Judicial Review

Because the Appeals Council denied review, the ALJ's decision becomes the final decision of the Commissioner, which is reviewable by this Court. 42 U.S.C. §§ 405(g), 1383(c); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Thus, judicial review of the ALJ's decision is

4

limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This Court may not substitute its judgment for that of the ALJ, reweigh evidence, resolve conflicts, or decide questions of credibility. *Id.*

Although the ALJ need not "address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). This requires the building of "an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must explain the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *see also Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate his analysis so that we can follow his reasoning." (internal citations omitted)).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining disability falls upon the ALJ, not the Court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Nonetheless, an ALJ must consider

all relevant evidence, and it cannot "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V. **Analysis**

On appeal, Plaintiff argues that: (1) the ALJ improperly excluded certain moderate limitations in Plaintiff's social functioning from his RFC assessment; (2) the ALJ failed to incorporate Plaintiff's moderate limitations in concentration, persistence, or pace into his hypothetical questions to the VE; (3) the ALJ erred in assessing the opinions of Plaintiff's treating psychiatrist, Joe Sangster, M.D.; (4) the ALJ did not properly analyze Plaintiff's impairments in combination; and (5) the ALJ failed to assess Plaintiff's subjective complaints in accordance with the applicable regulations. Because the Court agrees with Plaintiff regarding the ALJ's assessment of his treating psychiatrist's opinions, remand is appropriate.

**A. The ALJ Did Not Properly Evaluate Dr. Sangster's Opinion**

In evaluating a claim of disability, "[a]n ALJ must consider all medical opinions in the record." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). The opinion of a treating physician is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because of a treating physician's "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), "[a]n ALJ must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.

6

2010) (internal quotations omitted). Those reasons must be "supported by substantial evidence in the record." *Gudgel,* 345 F.3d at 470.

If a treating physician's opinion is not given controlling weight, the ALJ must still determine how much weight to give it. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; and (5) whether the physician was a specialist in the relevant area. *Id.*; 20 C.F.R. § 404.1527(c)(2)–(5). The ALJ should address these factors so the Court can properly review whether the ALJ followed the correct methodology in weighing the medical opinion evidence. *See, e.g.*, *Scrogham*, 765 F.3d at 697–98.

As the ALJ acknowledged, Dr. Sangster had been Plaintiff's treating physician since September 2013. (R. 25.) From September 2013 to October 2014, Dr. Sangster saw Plaintiff during at least five 30-minute sessions and one 60-minute session. (R. 635–638, 642–643, 924–929.) On January 2, 2014, Dr. Sangster completed a psychiatric/psychological impairment assessment of Plaintiff. (R. 621–628.) In this assessment, Dr. Sangster opined that Plaintiff's illness—bipolar disorder, mixed—caused marked difficulties in maintaining social functioning; marked deficiencies of concentration and persistence; and repeated episodes of deterioration or decompensation in work or work-like situations. (R. 621, 626.)

Although the ALJ considered these findings as those "of a treating and examining medical source," he gave them "little weight." (R. 25.) The ALJ gave three reasons for this assessment. The first two reasons were based on alleged inconsistencies with the record, namely, that Dr. Sangster's findings were inconsistent "with the longitudinal treatment records showing only conservative and routine treatment" and "with the clinical examination findings of record showing that while the claimant has some symptoms and limitations, his severe impairment does not result in any marked limitations." (*Id.*) For his third reason, the ALJ asserted that exacerbations in Plaintiff's symptoms were "often correlated with non-compliance with medication." (*Id.*)

The Court concludes, however, that none of these reasons, as articulated by the ALJ, are "good reasons" supported by substantial evidence. Moreover, in giving Dr. Sangster's opinion less than controlling weight, the ALJ failed to analyze the appropriate factors under 20 C.F.R. § 404.1527(c). Accordingly, remand is appropriate. *See Campbell,* 627 F.3d at 306–09 (remanding where the ALJ did not give "good reasons" for discounting a treating physician's assessment and did not "explicitly address the checklist of factors" from § 404.1527 to determine the weight to give to the assessment); *see also Scrogham,* 765 F.3d at 697 n.48 (indicating that the ALJ's failure to address the factors set forth in § 404.1527(c) was not harmless).

### i. The ALJ's Reasons for Discounting Dr. Sangster's Opinion

With respect to his first line of reasoning, the ALJ failed to identify the treatment records (or any other evidence) that he believed demonstrated that

8

Plaintiff was undergoing "conservative and routine" treatment. (R. 25.) As such, the Court cannot determine whether this assertion is supported by substantial evidence in the record. Nor is the ALJ permitted to make this assertion based on a reasonable, "common-sense" inference, as the Commissioner contends. (Def.'s Mem. at 7.) What may seem reasonable or common sense to a lay person may not make much sense in the medical world. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong."). As such, an ALJ cannot "play doctor" and make inferences about medical treatments without any supporting medical evidence. *See, e.g.*, *Myles v. Astrue*, 582 F.3d 672, 677–78 (7th Cir. 2009); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Yet that is what the ALJ did here when he determined, without any medical evidence, that Plaintiff's treatment regimen was conservative and routine.

Moreover, the ALJ failed to explain how conservative and routine treatment undermined Dr. Sangster's opinion. An ALJ cannot assume that symptoms or mental limitations are less serious based solely on his or her lay opinion as to the treatment given. For example, in *Myles*, the Seventh Circuit found that the ALJ improperly diminished the severity of the plaintiff's symptoms based on his unsupported belief that the plaintiff would have been prescribed insulin had her diabetes been more serious. 582 F.3d at 677–78. Similarly, the ALJ could not permissibly reason (without medical evidence to back it up) that simply because

9

Plaintiff was undergoing conservative treatment, his difficulties with social functioning, concentration, and persistence were not as bad as Dr. Sangster believed.

For his second line of reasoning, the ALJ similarly failed to identify the "clinical examination findings of record" that purportedly showed that Plaintiff's "severe impairment does not result in any marked limitations." (R. 25.) Again, without such an identification, the Court cannot determine whether the ALJ's reasoning is supported by substantial evidence. Although the Commissioner asserts that the ALJ was referring to the medical records discussed in the prior paragraph of the ALJ's opinion, Def.'s Mem. at 6–7, the ALJ's opinion itself does not indicate that this is the case. (R. 25.) This Court's review is limited to what is articulated in the ALJ's opinion. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Scott*, 647 F.3d at 739.

Even if the Court accepts the Commissioner's assertion, the ALJ's discussion of these records does not support his reasoning. In the paragraph at issue, the ALJ discussed: (1) a July 2013 psychological consultative examination conducted by Harvey Friedson, Psy.D; (2) a March 2014 internal medicine consultative examination conducted by Rochelle Hawkins, M.D.; and (3) an April 2014 treatment record from Deborah Killingsworth, M.D., Plaintiff's primary care physician. (R. 24–25, R. 611.)[2] The ALJ noted that Dr. Friedson found Plaintiff to be "alert without evidence of psychotic or schizophrenic process and reported no current suicidal or

---

[2] Although the ALJ's discussion did not refer to Dr. Hawkins or Dr. Killingsworth by name, the exhibits he cited correspond to the identified examinations. (*See* R. 611–620 (Ex. 11F); R. 914–919 (pages 7–12 of Ex. 21F).)

10

homicidal ideation"; that Dr. Hawkins found Plaintiff to be "alert and fully oriented with intact memory and judgment"; and that Dr. Killingsworth found Plaintiff to be "fully oriented with appropriate mood and affect, normal insight and normal judgment." (*Id.*)

These findings, however, fail to show that Plaintiff's limitations in social functioning, concentration, or persistence were not, in fact, marked. Notably, none of these findings addresses Plaintiff's concentration or persistence, or how well Plaintiff can function socially. Instead, they address findings about the Plaintiff's alertness, orientation, memory, judgment, insight, and/or mood. Although there could be some relationship between these findings and Plaintiff's limitations, the ALJ did not explain (or identify any evidence explaining) what this relationship is. Put simply, there is no "accurate and logical bridge" leading from these findings to the ALJ's conclusion regarding Plaintiff's ability to concentrate, persist, or function socially. *See Clifford*, 227 F.3d at 872.

As for the ALJ's third line of reasoning, the ALJ cited a single instance when, on February 27, 2014, Plaintiff reported "racing thoughts" to Dr. Sangster after being out of medication for three weeks. (R. 25, 930.) Based on this instance, the ALJ then concluded that there was a correlation between exacerbations in Plaintiff's symptoms and his non-compliance with medication. (R. 25.)

Again, there is no "accurate and logical bridge" leading from the cited evidence to the ALJ's conclusion. *See Clifford*, 227 F.3d at 872. Correlation does not constitute causation, and the ALJ cannot simply assume that a lack of medication

11

caused the racing thoughts that Plaintiff reported to Dr. Sangster in February 2014. *See Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) (an ALJ may not assume that non-compliance with medication caused seizures to become uncontrollable in the absence of record evidence establishing a causal link between non-compliance and ongoing seizure episodes). To the contrary, other evidence in the record indicates that Plaintiff experienced racing thoughts even when he was taking his medication. (*See, e.g.*, R. 79 (hearing testimony indicating that despite taking Trileptal, Plaintiff had racing thoughts); R. 1111–12 (December 2013 treatment record indicating that Plaintiff reported racing thoughts despite taking Fluoxetine and Trileptal).)

What's more, the ALJ provides no explanation as to why Plaintiff's non-compliance with medication in February 2014 would impact the findings that Dr. Sangster offered in January 2014. If Plaintiff's symptoms were exacerbated by non-compliance, as the ALJ reasoned, those symptoms would have only been exacerbated during the month of February; specifically, the three-week period prior to February 27, 2014. Dr. Sangster, however, rendered the assessment at issue on January 2, 2014, based on symptoms he observed *before* Plaintiff ran out of medication. The symptoms Dr. Sangster observed in rendering his January 2014 assessment could not have been exacerbated by Plaintiff's non-compliance with medication a month later.

In conclusion, it is undisputed that Dr. Sangster was Plaintiff's treating psychiatrist. As such, the ALJ was required to give good reasons supported by

substantial evidence to justify his decision to give Dr. Sangster's January 2014 opinion "little weight." The ALJ did not do so. Accordingly, remand is appropriate.

### ii. The ALJ's Failure to Address 20 C.F.R. § 404.1527(c)

Remand is also appropriate because, in determining the amount of weight to give Dr. Sangster's opinion, the ALJ failed to address or otherwise consider many of the factors set forth in 20 C.F.R. § 404.1527(c). For instance, the ALJ did not account for Dr. Sangster's specialty, see § 404.1527(c)(5), which is psychiatry. (R. 628.) This factor favors crediting Dr. Sangster's opinion over that of Dr. Friedson, who is a psychologist (R. 606); Dr. Hawkins, who performed an internal medicine examination (R. 23–24), indicating that she is neither a psychiatrist nor a psychologist; and Dr. Killingsworth, who is Plaintiff's primary care physician (R. 611). *See Scott*, 647 F.3d at 740 (fact that treating physician was a psychiatrist favored crediting her over a psychologist); *Kelly v. Colvin*, No. 14 C 1086, 2015 WL 4730119, at *6 (N.D. Ill. Aug. 10, 2015) (indicating that a psychiatrist's opinion should be given greater weight than an internal medicine specialist's opinion).

Nor did the ALJ consider the frequency and nature of the examinations by the different doctors, which favors crediting Dr. Sangster's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i)–(ii). Dr. Sangster examined Plaintiff twice before submitting his January 2014 opinion—in September and November 2013, for a total of 90 minutes—and four times afterwards, from February 2014 to October 2014, for a total of 120 minutes. (R. 635–638, 642–643, 924–929.) Dr. Friedson, on the other hand, only examined Plaintiff once, in July 2013, for 60 minutes. (R. 602–606.) Dr.

Hawkins also only examined Plaintiff once, in March 2014. (R. 611–620.) Notably, Dr. Hawkins's internal medicine examination only lasted 23 minutes, and most of the examination was focused on Plaintiff's physical condition, not Plaintiff's mental state. (*Id.*) Similarly, the April 2014 observation from Dr. Killingsworth that the ALJ relied upon was made in the context of a routine follow-up examination that was not focused on Plaintiff's mental impairments. (R. 914–919.)

Lastly, the ALJ did not address the supportability of Dr. Sangster's opinion or properly analyze the consistency of Dr. Sangster's opinion with the entire record. *See* 20 C.F.R. § 404.1527(c)(3)–(4). The ALJ did not, for example, examine whether the notes and records from Dr. Sangster and other treating and examining providers and observers supported the findings in Dr. Sangster's January 2014 assessment. And, as discussed above, the ALJ's determination that Dr. Sangster's January 2014 opinion was inconsistent with the clinical examination findings of record was flawed.

Ultimately, the ALJ failed to adequately justify his decision to give the opinion of Plaintiff's treating psychiatrist, Dr. Sangster, "little weight," and remand is appropriate. To be clear, the Court is not finding that, on remand, the Commissioner must give controlling weight to Dr. Sangster's January 2014 opinion, or any other opinion of Dr. Sangster. Rather, if the Commissioner determines that Dr. Sangster's opinion is not entitled to controlling weight, she must support this determination with good reasons supported by substantial evidence. And if Dr. Sangster's opinion is given less than controlling weight, the Commissioner must

sufficiently explain the rationale underlying the amount of weight given to this opinion, in accordance with the factors set forth in 20 C.F.R. § 404.1527(c).

### B. Plaintiff's Remaining Arguments

Because remand is required, the Court need not address Plaintiff's remaining arguments. The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part, and the Commissioner's motion for summary judgment [Doc. No. 15] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**  **ENTERED:**

**DATE:   July 13, 2018**

　　　　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**